1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    ANGELO CORREA,                          No. 1:19-cv-00369-DAD-BAK (GSA) (PC)

12                  Plaintiff,                 **FINDINGS AND RECOMMENDATIONS TO
                                               GRANT IN PART AND DENY IN PART**
13          v.                                 **DEFENDANTS' MOTION FOR SUMMARY
                                               JUDGMENT**
14    BRAUDRICK, et al.,
                                               (Doc. 70)
15                  Defendants.
                                               14-DAY DEADLINE TO OBJECT
16

17          Angelo Correa is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil

18    rights action brought pursuant to 42 U.S.C. § 1983.

19          On July 22, 2021, Defendants Braudrick, Maddux, and Torres filed a motion for summary

20    judgment addressing the merits of Plaintiff's complaint. (Doc. 70.) Plaintiff filed an opposition

21    (Doc. 79), and Defendants filed a reply (Doc. 80). For the reasons given below, the Court will

22    recommend Defendants' motion for summary judgment be granted in part, and denied in part.[1]

23    //

24    //

25    //

26

27    _____

[1] In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments,
points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections,
and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be

28    construed to the effect that this court did not consider the argument, document, paper, or objection. This court
thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

1

## I.    ALLEGATIONS OF THE OPERATIVE COMPLAINT

In his first amended complaint, Plaintiff contends that on March 22, 2017, while at Wasco State Prison in the Administrative Segregation Building, waiting to be taken from a holding cage to a cell, Defendant Braudrick commanded Plaintiff to remove his clothes. (Doc. 24 at 3.) Plaintiff advised Braudrick that an unclothed body search of an inmate was to be conducted outside the view of others and that female staff and other inmates were looking on. (*Id*. at 3-4.) In reply, Braudrick repeated his command, "in a very aggressive way," that Plaintiff remove his clothes. (*Id*. at 4.) Plaintiff then saw Defendant Sergeant Maddux who told him he (Plaintiff) needed to talk to him (Maddux). (*Id*.) Braudrick then put his hand through the port in the holding cage, grabbed Plaintiff's shirt and started pulling "real hard." (*Id*.) Plaintiff responded by spitting on Braudrick so Braudrick would stop because Plaintiff's "head was about to hit the holding cage door." (*Id*.) Plaintiff contends after he spat on Braudrick, Braudrick stopped pulling on Plaintiff's shirt, opened the holding cage door and tried to grab Plaintiff. (*Id*.) Plaintiff states he then attempted to kick Braudrick "so he could back away and [Braudrick] did back away," but then grabbed Plaintiff and put him on the ground. (*Id*. at 4-5.) After Plaintiff was on the ground Braudrick began punching Plaintiff in the face, lower and upper back, repeatedly. (*Id*. at 5.) Plaintiff was bleeding and in a lot of pain. (*Id*.) Plaintiff was screaming and Braudrick told Plaintiff to "shut the fuck up." (*Id*.) As Braudrick was punching Plaintiff, Sergeant Maddux "was just standing their [sic] watching" and after Plaintiff screamed at Maddux to "tell him to stop," Maddux responded by saying, "That's what you get." (*Id*.) Plaintiff alleges there were other prisoners nearby telling Plaintiff to "'write a 602 that's illegal." (*Id*.) Maddux responded to the other prisoners by telling them to "'mind your business.'" (*Id*. at 5-6.) After Braudrick ceased punching Plaintiff, Plaintiff "could see blood on the ground," and he was unable to "open the right side of [his] eye." (*Id*. at 6.) He was in a lot of pain from injuries to his eyes, forehead, and upper and lower back. (*Id*.)

//

//

//

1   //

2        Following the incident with Braudrick and Maddux, Plaintiff contends Defendant Salinas[2]

3   came to his cell door "to do a 7219 medical report." (Doc. 24 at 6.) Plaintiff told Salinas he was in

4   a lot of pain from injuries to his face, eyes, forehead, and upper and lower back. (*Id.*) Plaintiff

5   showed Salinas the injuries and stated he needed medical treatment. (*Id.* at 6-7.) Salinas

6   responded by saying, "'Just go to sleep you don't need medical treatment.'" (*Id.* at 7.) Plaintiff

7   was in a lot of pain overnight and the following day and evening. (*Id.*) Plaintiff contends he had

8   pre-existing back problems that worsened following the incident of March 22, 2017. (*Id.*) Plaintiff

9   states Salinas was aware Plaintiff was injured, in a lot of pain, and in need of medical treatment

10   because he told her so and showed Salinas the injuries. (*Id.* at 8.) Salinas did not call medical staff

11   and advise them of Plaintiff's "situation like she should have done." (*Id.*)

12   **II.**    **LEGAL STANDARDS**

13     **A. Summary Judgment**

14        Summary judgment is appropriate when the moving party "shows that there is no genuine

15   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

16   Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine

17   issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing

18   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by

19   "citing to particular parts of materials in the record, including depositions, documents,

20   electronically stored information, affidavits or declarations, stipulations …, admissions,

21   interrogatory answers, or other materials," or by showing that such materials "do not establish the

22   absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

23   evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears

24

25   [2] The Court notes the psychiatric technician is identified by the parties as both as "Defendant Salinas" and "Defendant Torres" despite the fact Plaintiff's deliberate indifference claim involves a single individual. (*See* Doc. 29

26   [Defendants' Answer] at 1 ["*Attorneys for Defendants Braudrick, Maddux and Torres*"], 2 ["Defendant Salinas admits that she was a Psychiatric Technician …"]; *see also* Doc. 37-2 at 1 ["*Attorneys for Defendants Braudrick,*

27   *Maddux and Torres*"], 2 ["Plaintiff received medical treatment from Defendant Salinas, which he claims was inadequate"]; Doc. 43 at 1, 3 ["*Attorneys for Defendants Braudrick, Maddux and Salinas*"]; Doc. 70 ["Attorneys for

28   Defendants Braudrick, Maddux, and Torres [Salinas]"].)

1   the burden of proof at trial, "the moving party need only prove that there is an absence of

2   evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*,

3   477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

4          Summary judgment should be entered against a party who fails to make a showing

5   sufficient to establish the existence of an element essential to that party's case, and on which that

6   party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of

7   proof concerning an essential element of the nonmoving party's case necessarily renders all other

8   facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted,

9   "so long as whatever is before the district court demonstrates that the standard for the entry of

10  summary judgment … is satisfied." *Id.* at 323.

11         In judging the evidence at the summary judgment stage, the court may not make

12  credibility determinations or weigh conflicting evidence. *Soremekun v. Thrifty Payless, Inc.*, 509

13  F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted). It must draw all inferences

14  in the light most favorable to the nonmoving party and determine whether a genuine issue of

15  material fact precludes entry of judgment. *Comite de Jornaleros de Redondo Beach v. City of

16  Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The

17  court determines only whether there is a genuine issue for trial. *Thomas v. Ponder*, 611 F.3d

18  1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

19         **B.  Excessive Force**

20         The Eighth Amendment prohibits those who operate our prisons from using "excessive

21  physical force against inmates." *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam); *Hudson v.

22  McMillian*, 503 U.S. 1, 8-9 (1992); *Hoptowit v. Ray*, 682 F.2d 1237, 1246, 1250 (9th Cir. 1982)

23  (prison officials have "a duty to take reasonable steps to protect inmates from physical abuse");

24  *see also Vaughan v. Ricketts*, 859 F.2d 736, 741 (9th Cir. 1988), cert. denied, 490 U.S. 1012

25  (1989) ("prison administrators' indifference to brutal behavior by guards toward inmates [is]

26  sufficient to state an Eighth Amendment claim"). As courts have succinctly observed, "[p]ersons

27  are sent to prison as punishment, not for punishment." *Gordon v. Faber*, 800 F. Supp. 797, 800

28  (N.D. Iowa 1992) (citation omitted), aff'd, 973 F.2d 686 (8th Cir.1992). "Being violently

4

assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citation and quotation omitted).

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm." *Hudson*, 503 U.S. at 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7. The extent of a prisoner's injury is also a factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. *Id.*

Although the absence of serious injury is relevant to the Eighth Amendment inquiry, it is not determinative. *Hudson,* 503 U.S. at 7. That is, use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injury. *Id.* at 9.

Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer de minimis injuries. *Hudson*, 503 U.S. at 6-7 (8th Amendment excludes from constitutional recognition de minimis uses of force). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether significant injury is evident. *Id.* at 9; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38. However, not "every malevolent touch by a prison guard gives rise to a federal cause of action."

1  *Hudson*, 503 U.S. at 9.

2  **C. Deliberate Indifference to Serious Medical Needs**

3  Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a

4  prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need

5  is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton

6  infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (2014) (quoting *Jett v. Penner*,

7  439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.

8  1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)

9  (en banc)).

10  To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must

11  first "show a serious medical need by demonstrating that failure to treat a prisoner's condition

12  could result in further significant injury or the unnecessary and wanton infliction of pain. Second,

13  the plaintiff must show the defendants' response to the need was deliberately indifferent."

14  *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096

15  (quotation marks omitted)).

16  As to the first prong, indications of a serious medical need "include the existence of an

17  injury that a reasonable doctor or patient would find important and worthy of comment or

18  treatment; the presence of a medical condition that significantly affects an individual's daily

19  activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060,

20  1066 (9th Cir. 2014) (citation and internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at

21  1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

22  As to the second prong, deliberate indifference is "a state of mind more blameworthy than

23  negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or

24  safety.'" *Farmer*, 511 U.S. at 835 (quoting *Whitley*, 475 U.S. at 319). Deliberate indifference is

25  shown where a prison official "knows that inmates face a substantial risk of serious harm and

26  disregards that risk by failing to take reasonable measures to abate it." *Id.*, at 847. In medical

27  cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or

28  possible medical need and, (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122

(quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096, citing *McGuckin*, 974 F.2d at 1060. Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)). To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see also Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

## III.    THE PARTIES' FACTS

During the relevant time, Plaintiff was housed at Wasco State Prison and is presently serving a 26 years-to-life sentence with the possibility of parole. (Doc. 70-3 at 2 [DUF[3] 1, 6]; Doc. 79 at 2 [Opposition: admitted].) Defendants Braudrick, Maddux and Torres[4] are employed respectively as a correctional officer, a correctional sergeant, and a psychiatric technician. (Doc. 70-3 at 2 [DUF 2-4]; Doc. 79 at 2-3 [Opposition: admitted].)

On March 22, 2017, Plaintiff spat on, and attempted to kick Defendant Braudrick. (Doc. 70-3 at 2 [DUF 5]; Doc. 79 at 3 [Opposition: admitted].) During the incident Defendant Maddux was present in the Administrative Segregation unit. (Doc. 70-3 at 2 [DUF 8]; Doc. 79 at 3 [Opposition: admitted].) And, at 1843 hours, Defendant Torres responded to an alarm in the Administrative Segregation unit. (Doc. 70-3 at 2 [DUF 9]; Doc. 79 at 3 [Opposition: admitted].)

Defendant Torres viewed Plaintiff in a holding cell and authored a CDCR Form 7219;

---

[3] "DUF" refers to Defendants' Undisputed Facts.

[4] The Court will hereafter refer to the psychiatric technician as Defendant Torres.

1   Torres' observations included a reddened right ear, left and right wrists, and left and right knees.

2   (Doc. 70-3 at 3 [DUF 10-11]; Doc. 79 at 3 [Opposition: admitted].) Torres did not observe any

3   serious injuries, or injuries requiring additional or heightened intervention. (Doc. 70-3 at 3 [DUF

4   12]; Doc. 79 at 3 [Opposition: *denied*].) The CDCR Form 7219 was referred to the Registered

5   Nurse in case elevated care was necessary. (Doc. 70-3 at 3 [DUF 13]; Doc. 79 at 4 [Opposition:

6   admitted].)

7        Plaintiff was returned to his cell at 1846 hours. (Doc. 70-3 at 3 [DUF 14]; Doc. 79 at 4

8   [Opposition: admitted].) Subsequently, Plaintiff pled guilty in connection with the March 22,

9   2017, incident and received a sentence of two years, eight months. (Doc. 70-3 at 3 [DUF 15];

10   Doc. 79 at 4 [Opposition: admitted].)

11             ***Judicially Noticed Facts***[5]

12        On August 20, 2019, Plaintiff entered a plea of nolo contendre to a violation of California

13   Penal Code section 69[6] and was found guilty by the state court.[7] (Doc. 71 at 30, 45-50.) The

14   remaining count were dismissed in the furtherance of justice (Cal. Pen. Code, § 1385). (Doc. 71 at

15   31.) On September 19, 2019, Plaintiff was sentenced to a term of 16 months, doubled to 32

16   months pursuant to California Penal Code section 667(e). (Doc. 71 at 32, 51.)

17   //

18

19   [5] In a Request for Judicial Notice filed concurrently with the motion for summary judgement, Defendants ask this Court to take judicial notice of documents pertaining to a criminal matter in the Kern County Superior Court, case

20   number 17-03-0099, *People v. Correa*, pursuant to Federal Rule of Evidence 201(b)(2). (*See* Doc. 71.)

21   Rule 201 of the Federal Rules of Evidence allows a court to take judicial notice of an adjudicative fact that is "not subject to reasonable dispute," because it (1) "is generally known within the trial court's territorial jurisdiction"; or

22   (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a)–(b). A court may take judicial notice of matters of public record. *United States ex rel. Lee v.

23   Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). Matters of public record include "documents on file in federal or state courts." *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

24   Defendants' request is granted.

25   [6] Under Section 69, "[e]very person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of

26   force or violence, the officer, in the performance of his or her duty, is punishable by a fine ... or by imprisonment ... not exceeding one year, or by both such fine and imprisonment." Cal. Penal Code § 69(a).

27

28   [7] California Penal Code section 148 is closely related to section 69. Both deal with resisting arrest, but section 69 is a more serious offense because it requires an actual "threat or violence," rather than just willful resistance, delay, or obstruction of a public officer. *Cf.* Cal. Pen. Code § 69 to Cal. Pen. Code § 148(a).

1     //

2         **IV.**    **DISCUSSION**

3             **A. Excessive Force Against Braudrick & Maddux**

4         Defendants contend Plaintiff's Eighth Amendment claim is barred by the *Heck* doctrine

5 following Plaintiff's guilty plea to obstructing or resisting an officer because if Plaintiff were to

6 prevail in this action it would contradict a prior finding of guilt, meaning his claim is not

7 permitted. (Doc. 70-2 at 3-5.)

8         Plaintiff responds that his Eighth Amendment claims for excessive force are not *Heck*

9 barred because "Plaintiff Correa prevailing in this lawsuit would not contradict a prior finding of

10 guilt." (Doc. 79 at 10.) Plaintiff contends *Heck* does not apply because he does not "deny resisting

11 Defendant Braudrick orders to comply, or challenge the factual basis presented at my plea

12 hearing, also Defendants did not show in the summary judgment any evidence to prove that I …

13 did deny resisting Defendant Braudrick orders to comply, or that I …. did challenge the factual

14 basis presented at my plea hearing." (Doc. 79 at 12.) Plaintiff contends "Defendant Maddux is

15 civilly liable as a bystander because at the time Defendant Braudrick was using excessive force

16 against" Plaintiff "Defendant Maddux failed to intervene." (Doc. 79 at 12-13.)

17         Replying to Plaintiff's opposition, Defendants contend Plaintiff's "bald assertions … do

18 not refute the undisputed fact that [Plaintiff] spat on Defendant Braudrick and attempted to kick

19 him in the leg on March 22, 2017," conduct prompting Braudrick to place Plaintiff on the ground.

20 (Doc. 80 at 2.) Thereafter, Plaintiff pled guilty to obstructing and resisting an executive officer

21 and was sentenced to an additional 32-month sentence. (*Id.*) Defendants contend "the use of force

22 applied by Defendant Braudrick—and the supervision thereof by Defendant Maddux—was

23 lawful and in direct response to Plaintiff's disruptive conduct." (*Id.*) As a result, Defendants

24 contend "judgment in favor of the Plaintiff on his excessive force claim against Defendant

25 Braudrick, and his Eighth Amendment claim against Defendant Maddux, would necessarily imply

26 the invalidity of Plaintiff's guilty plea …. *Heck* therefore precludes Plaintiff's section 1983

27 claims that arise from his takedown." (*Id.*)

28     //

1  //

2                **i.**        **The *Heck* Bar**

3          Defendants contend Plaintiff's claim is *Heck*-barred. (*See* Doc. 70-2 at 3-5.)

4          Under *Heck*, a prisoner may not proceed on a claim for damages under § 1983 if a

5  judgment favoring plaintiff "would necessarily imply the invalidity of his conviction or

6  sentence." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). In such a case, plaintiff is foreclosed

7  from proceeding absent proof that the conviction or sentence has been reversed, expunged or

8  invalidated. *Id*. at 486-487. However, "if the district court determines that the plaintiff's action,

9  even if successful, will not demonstrate the invalidity of any outstanding criminal judgment

10  against the plaintiff, the action should be allowed to proceed ...." *Id*. at 487. As an illustration of

11  the rule's application, the *Heck* Court explained that an individual convicted of resisting arrest,

12  defined as intentionally preventing a peace officer from effecting a lawful arrest, would be barred

13  from bringing a claim for damages for unlawful arrest. *Id*. at 487, n.6. That result is compelled by

14  the fact that plaintiff, in order to prevail on his § 1983 claim, would have to negate an element of

15  his conviction offense: the lawfulness of the arrest. *Id.*

16          When a plaintiff bringing an excessive use of force claim has been convicted of resisting

17  arrest, application of the *Heck* bar turns on the relationship between the arrest that has been

18  determined lawful in the criminal case and the use of force alleged to have violated plaintiff's

19  rights. For example, an "allegation of excessive force by a police officer would not be barred by

20  *Heck* if it were distinct temporally or spatially from the factual basis for the person's conviction."

21  *Beets v. County of Los Angeles*, 669 F.3d 1038, 1042 (9th Cir. 2012); *see also Sanford v. Motts*,

22  258 F.3d 1117, 1120 (9th Cir. 2001) ("[e]xcessive force used after an arrest is made does not

23  destroy the lawfulness of the arrest"). Similarly, *Heck* does not bar an excessive force claim based

24  on allegations that the force used was unreasonable in relation to the degree of resistance to arrest.

25  *Hooper v. County of San Diego*, 629 F.3d 1127, 1133 (9th Cir. 2011). Such a claim, if proven,

26  would not imply the invalidity of a conviction for resisting arrest. *Id.* In sum, *Heck* does not bar

27  claims against police for excessive force arising from conduct independent of the facts giving rise

28  to a plaintiff's prior conviction. *Smith v. City of Hemet*, 394 F.3d 689, 698 (9th Cir. 2005), cert.

1   denied, 545 U.S. 1128 (2005).

2        In contrast, a § 1983 action must be dismissed if the criminal conviction stands and arises

3   "out of the same facts ... and is fundamentally inconsistent with the unlawful behavior for which

4   section 1983 damages are sought ...." *Beets*, 669 F.3d at 1042 (internal citations & quotation

5   marks omitted) (barring plaintiff's § 1983 claim for excessive force when decedent killed by

6   officer but accomplice convicted of aiding and abetting assault on peace officer). Where the

7   alleged wrongful conduct that serves as the basis of the § 1983 claim is very "closely interrelated"

8   with the act for which plaintiff was convicted, the claim is *Heck*-barred. *Cunningham v. Gates*,

9   312 F.3d 1148, 1154 (9th Cir. 2002), as amended on denial of reh'g (Jan. 14, 2003) (applying

10  *Heck* bar where there was no break between the plaintiff's provocative act of firing on the police

11  and the police response that he claimed was excessive).

12       The application of *Heck*, as the foregoing authorities demonstrate, is a highly fact-

13  dependent inquiry that turns on the precise factual basis for the conviction. In the case at bar,

14  Plaintiff pled no contest to a charge of violating Cal. Penal Code § 69 (resisting or obstructing an

15  officer) and was convicted. A conviction under Cal. Penal Code § 69, which makes it a crime to

16  resist, obstruct, or delay a peace officer in the performance of his or her duties, "can be valid even

17  if, during a single continuous chain of events, some of the officer's conduct was unlawful,"

18  because the conviction itself "requires only that some lawful police conduct was resisted, delayed,

19  or obstructed during that continuous chain of events." *Hooper*, 629 F.3d at 1131 (citing *Yount v.

20  City of Sacramento*, 43 Cal. 4th 885 (2008)). The conduct on which a no contest plea to such a

21  charge is based may coexist with conduct supporting a § 1983 claim insofar as "two isolated

22  factual contexts exist." *Id.* at 1132. When a case involves a plea of no contest, as it does here, the

23  question of whether the *Heck* bar applies turns on exactly what facts the plea was based on; the

24  facts that establish the foundational basis for the plea cannot be undermined by the § 1983 claim.

25  *See Winder v. McMahon*, 345 F. Supp. 3d 1197, 1203 (C.D. Cal. 2018).

26       Here, the record does not include the foundational basis for Plaintiff's no contest plea. The

27  Court has carefully reviewed the documents filed as an exhibit to Defendants' Request for

28  Judicial Notice. (*See* Doc. 71.) A transcript from the plea proceedings is not included, and

references to the factual basis for the plea are not fact specific. (*Id*. at 31 [Docket entry: "UPON STIPULATION OF COUNSEL, COURT FINDS A FACTUAL BASIS FOR THE PLEA"], 45-48 [Felony Advisement of Rights, Waiver and Plea Form, no facts recited].)

Defendants contend the allegations in Plaintiff's complaint "directly contradict the facts offered in his plea and thus awarding Correa civil damages in this lawsuit would imply that the additional time on his sentence and force utilized by Defendant Braudrick were improper." (Doc. 70-2 at 4.) Defendants' citations to the previously noted exhibit (*e.g*., "Defs.' RJN, Ex. A at 41-47") do not include "the facts offered in his plea."

Following review of Plaintiff's operative complaint and the transcript of Plaintiff's deposition lodged with the Court, Plaintiff's no contest plea may be valid even if some of Defendant Braudrick's conduct was unlawful. *Hooper*, 629 F.3d at 1131. In other words, Plaintiff's guilty plea to obstructing or resisting Braudrick by spitting on him and attempting to kick him may not be invalidated by this proceeding where Plaintiff alleges that as a part of the incident giving rise to his guilty plea, Braudrick also acted unlawfully by using excessive force after Plaintiff was restrained following the spitting and attempted kicking by Plaintiff. Plaintiff testified that after he had been taken to the ground by Braudrick, and after he was handcuffed and not resisting, Braudrick continued to punch Plaintiff in the face and back. (Correa Deposition Transcript at 33-34.)

Because the record before this Court does not include the factual basis for Plaintiff's plea, and because whether Braudrick used unreasonable force *after* Plaintiff was taken to the ground, handcuffed and restrained, is in dispute, the undersigned finds the excessive force claims against Braudrick and Maddux are not *Heck* barred. *Hooper v. County of San Diego*, 629 F.3d at 1133; *Sanford v. Motts*, 258 F.3d at 1120 ("if Motts used excessive force subsequent to the time Sanford interfered with his duty, success in her section 1983 claim will not invalidate her conviction. *Heck* is no bar"). As a result, the undersigned recommends Defendants' motion for summary judgment concerning Plaintiff's excessive force claims against Defendants Braudrick and Maddux be denied.

//

1   //

2                    **B. Deliberate Indifference Against Torres**

3           Defendants contend Plaintiff's Eighth Amendment deliberate indifference claim against

4   Defendant Torres is not supported by admissible evidence. (Doc. 70-2 at 5-7.) Defendants

5   contend Torres evaluated Plaintiff within minutes of the incident and recorded her objective

6   findings—reddened right ear, reddened left and right wrists, and reddened left and right knees—

7   as required, and then referred those findings to the supervising registered nurse; the objective

8   findings revealed no additional care was needed. (*Id*. at 6.) Defendants contend Plaintiff's claim

9   "is premised on a difference of opinion over the exam Defendant Torres provided," but Plaintiff's

10  opinion does not create a disputed fact precluding summary judgment. (*Id*. at 6-7.)

11          In opposition, Plaintiff contends his claim is supported by admissible evidence. (Doc. 79

12  at 15.) Plaintiff asserts that Torres "failed to notify Nurse Calderon" of his "true condition"

13  despite Plaintiff advising Torres he was "in a lot of pain, and that [he] needed medical treatment."

14  (*Id*. at 16.) Plaintiff contends Torres "lied when she recorded her findings" on CDCR Form 7219.

15  (*Id*.) Torres did not "state that Plaintiff Correa eyes were swollen in pain, face swollen in pain,

16  and back in a lot of pain." (*Id*. at 17.) Plaintiff contends CDCR Form 7362 dated March 23, 2017,

17  creates a disputed issue of fact; it records Plaintiff's "true condition," including worsening back

18  pain. (*Id*. at 7 & 17.) Plaintiff "suffer[ed] unnecessary, and wanton infliction of pain" as the result

19  of Torres' failure to notify Nurse Calderon of Plaintiff's "true condition." (*Id*. at 17-18.)

20          Defendants reply their undisputed evidence shows Defendant Torres provided

21  constitutionally adequate medical care by providing a prompt medical examination and recording

22  her findings on a CDCR Form 7219. (Doc. 80 at 2-3.) Based on those findings, Torres concluded

23  that additional care was not required at that time. (*Id.* at 3.) Defendants reply that while "Plaintiff

24  asserts that Defendant Torres 'lied when she recorded her findings,' the crux of [Plaintiff's]

25  arguments ultimately amount to a mere disagreement with Defendant Torres' course of

26  treatment," and such a different of opinion does not amount to deliberate indifference. (*Id.* at 3.)

27  Defendants contend Plaintiff's efforts to create a dispute of material fact by attaching a Health

28  Care Services Request Form dated March 23, 2017, amounts to insufficient evidence to

demonstrate a purposeful act and culpable state of mind by Torres because while the form records Plaintiff's complaints of pain, it "does not otherwise contain a medical diagnosis or substantiation of his complaints." (*Id*. at 3.)

### 1. *Defendant Torres' Declaration*

Defendant Torres declares she is a licensed psychiatric technician employed at Wasco State Prison. (Doc. 70-5, ¶ 1.) Torres provides basic level nursing care under the review of a clinical provider, including communicating objective observations to the health care team. (*Id*. at ¶ 2.) Torres evaluated Plaintiff on March 22, 2017 at 1843 hours in response to an alarm. (*Id*. at ¶ 3.) Torres viewed Plaintiff in the holding cell and authored a CDCR Form 7219, noting Plaintiff "had reddened areas near his right ear, left and right wrists, and left and right knees." (*Id*.) Torres declares Plaintiff "did not raise any subjective complaints." (*Id*.) Torres did not observe any serious objective injuries, nor any injuries that required intervention by a supervising registered nurse. (*Id*.) Nevertheless, as required by protocol, Torres notified a registered nurse of the objective findings following her examination of Correa. (*Id*.) Torres declares that because Plaintiff "did not exhibit any serious injuries, or injuries that warranted additional care, he was returned to his cell at 1846 hours." (*Id*.) Torres declares that at no time was she deliberately indifferent to any subjective complaints by Plaintiff, nor did she observe any injures that required heightened or additional care. (*Id*. at ¶ 4.)

### 2. *Analysis*

Initially, the undersigned notes Defendants are correct that the Health Care Services Request Form dated March 23, 2017, and attached in support of Plaintiff's opposition, does not contain a medical diagnosis, nor does it substantiate Plaintiff's complaints that Torres did not accurately record his complaints of the previous day. A review of the form reveals only that Plaintiff's own complaints were recorded in Part I, the section entitled "To Be Completed By The Patient," and the reason the patient was requesting health care services. (Doc. 79 at 7.) In Part II of the form, the section "to be completed by the triage registered nurse," there are no subjective or objective findings, nor is an assessment or plan noted. The section reflects only that the form was received and reviewed on March 24, 2017, references a "Nursing Encounter Form," includes the

14

1  notes "musculoskeletal," and "yes" to whether there was referral to "PCP" and "routine" in the

2  box for appointment date. (*Id.*) The form was completed and signed by "N. Ressom, RN"[8] on

3  March 27, 2017. (*Id.*)

4          Moreover, Plaintiff testified at his deposition that he does not know what diagnosis was

5  made following the submission of the Health Care Services Request Form. (Correa Deposition

6  Transcript at 43, 45.) As a result, Plaintiff's complaints of pain, as recorded on the Health Care

7  Services Request Form, do not serve to create a dispute concerning Torres's actions the day

8  prior—March 22, 2017— and recorded on CDCR Form 7219. (Doc. 70-4 at 14 & Doc. 71 at 77.)

9          The difference between the redness reported by Defendant Torres following her

10  examination of Plaintiff, and the swelling and pain complaints alleged by Plaintiff, seems to

11  amount to no more than a difference of medical opinion. "A difference of opinion between a

12  physician and the prisoner—or between medical professionals—concerning what medical care is

13  appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987

14  (9th Cir. 2012), overruled in part on other grounds by *Peralta v. Dillard*, 744 F.3d 1076, 1082-83

15  (9th Cir. 2014).

16          "A medical need is serious if 'failure to treat a prisoner's condition could result in further

17  significant injury or the unnecessary and wanton infliction of pain.'" *Peralta*, at 1086. There is no

18  evidence Plaintiff's condition resulted in further significant injury or pain. In fact, Plaintiff

19  testified at his deposition that his pain decreased from an 8 or 9 out of 10 immediately after the

20  incident to a 4 or 5 out of 10 four days after the incident. (Correa Deposition Transcript at 55-56.)

21          Courts have held that the injuries Plaintiff alleges or describes do not amount to a serious

22  medical need. *See Zoellner v. City of Arcata*, ___F.Supp.3d ___, 2022 WL 602874 *17 (N.D.

23  Cal) (Mar. 1, 2022) (serious medical need found where evidence "suggests more than simple

24  bruising and swelling"); *MacFalling v. Nettleton*, No. CV 17-02399 SVW (AFM), 2017 WL

25  3498616, at *7 (C.D. Cal. Aug. 15, 2017) (determining that cuts, abrasions, and swollen hands

26  resulting from overly tight handcuffs did not rise to level of a serious medical need); *Telles v.*

27

28  _____
[8] "Ressom" is the Court's best guess following review of the signature on the form; the name could also be "Person" or a similar variation.

15

*Stanislaus County Sheriff's Dep't*, No. 1:10-cv-01911-AWI-JLT, 2011 WL 2036962, at *5 (E.D. Cal. May 24, 2011) (stating that cuts and bruises were not a serious medical need where plaintiff failed to establish the severity of the injuries); *see also Dawes v. Coughlin*, 159 F.3d 1346 (2d Cir. 1998) (1.5-inch laceration on elbow was not sufficiently serious to give rise to an Eighth Amendment claim); *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (finding that a cut over one eye, a quarter-inch piece of glass embedded in plaintiff's palm, and bruises on shoulders and elbows did not amount to a serious medical need when the injuries did not require stitches or medicine); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) ("swollen wrists with some bleeding" from handcuffs not a serious medical need); *Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir. 2013) (superficial physical conditions, such as minor "cuts bruising and swelling," do not rise to the level of serious medical needs requiring medical treatment); *Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006) (split lip and swollen cheek were not serious medical need); *Zentmyer v. Kendall Cty., Ill.*, 220 F.3d 805, 810 (7th Cir. 2000) (minor scrapes and bruises; reasoning that failure to treat "the sorts of ailments for which many people who are not in prison do not seek medical attention—does not ... violate the Constitution"); *Roseberry v. Prisoner Transp. Servs.*, No. 4:15-CV-P126-JHM, 2016 WL 324549, at *4 (W.D. Ky. Jan. 26, 2016) (swelling and bruising "simply do not rise to the level of an objectively serious medical need"); *Scholes v. Fayette Cty. Jail*, Civil No. 11-140, 2011 WL 2115874, at *4 (S.D. Ill. May 26, 2011) (finding that the plaintiff's injuries, which were the "the normal incidents of fighting, e.g., abrasions, bruising, and mild bleeding," were not objectively serious); *Caldwell v. McEwing*, No. 00-1319, 2006 WL 2796637, at *11 (C.D. Ill. Sept. 28, 2006) (finding that a swollen eye and a 1/2-inch cut not requiring stitches did not constitute a serious medical need); *Nelson v. Rodas*, No. 01 CIV7887RCCAJP, 2002 WL 31075804, at *14 (S.D.N.Y. Sept.17, 2002) (back spasms and pain not a serious medical need); *Solomon v. Moore*, No. 97 Civ. 0201(KTD), 2000 WL 385521, at *2–3 (S.D.N.Y. Apr.14, 2000) (plaintiff who was able to walk and function normally despite neck, back and groin pains had no serious medical needs).

      Even if the Court were to find that the subjective allegations of pain and swelling are sufficient to constitute a serious medical need, Plaintiff cannot overcome the burden met by

Defendants. The record evidence establishes that Defendant Torres timely evaluated Plaintiff and recorded and forwarded her observations as required. (Doc. 70-5.) Even taking Plaintiff's assertions as true, that rather than merely the "redness" in the areas recorded by Torres (*see* Doc. 70-4 at 14), Plaintiff complained of a lot of pain and his need for medical treatment due to swelling of his eyes, face and back, there is no evidence Defendant Torres knew Plaintiff was at risk of serious injury. *Toguchi v. Chung*, 391 F.3d at 1057. Defendant Torres offers evidence to the contrary in the form of her declaration and the CDCR 7219. Plaintiff offers only conclusory statements and subjective unsubstantiated complaints that do not overcome Defendants' evidence.

Even if Torres should have been aware, but was not, that her actions put Plaintiff at risk— observing and reporting redness rather than complaints of pain and swelling—Torres has not violated the Eighth Amendment, no matter how severe the risk. *See Peralta v. Dillard*, 744 F.3d at 1087.

In sum, viewing the facts in the light most favorable to Plaintiff, Defendants have established an absence of evidence to support the claim that Defendant Torres knowingly placed Plaintiff at risk of serious injury. *See Farmer*, 511 U.S. at 847; *Toguchi*, 391 F.3d at 1051. Therefore, the undersigned recommends summary judgment be granted in favor of Defendant Torres concerning Plaintiff's deliberate indifference to serious medical needs claim.

## C. Qualified Immunity

Defendants contend they are entitled to qualified immunity on Plaintiff's Eighth Amendment claims. (Doc. 70-2 at 7-9.) In opposition, Plaintiff contends Defendants are not entitled to qualified immunity. (Doc. 79 at 18-19.)

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law*." Malley v. Briggs*, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. *See Saucier v. Katz*, 533 U.S.

17

194, 201 (2001). If a violation can be made out, the next step is to ask whether the right was clearly established. *See id*. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition...." *Id*. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. *See id*. at 205.

The "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (explaining the sequence, while "often appropriate," "should no longer be regarded as mandatory"). When the two-part *Saucier* test "is properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Hernandez v. City of San Jose*, 897 F.3d 1125, 1132-33 (9th Cir. 2018) (citations omitted).

*1. Defendant Braudrick & Maddux*

Defendants contend Plaintiff must show that when Defendant Braudrick utilized force after Plaintiff spat on and attempted to kick him, the law was clear that every reasonable official would understand their actions violated the Eighth Amendment, but that Plaintiff will be unable to do so as a result of his guilty plea to restricting and obstructing Braudrick in the course of his duties. Further, Defendants contend this Court should find no reasonable official would think that Braudrick's use of force against a spitting and kicking Plaintiff was unlawful. (Doc. 70-2 at 8.)[9] In opposition, Plaintiff contends Defendant Braudrick used excessive force after Plaintiff was taken to the ground and no longer resisting, making qualified immunity improper. (Doc. 79 at 21.) In reply, Defendants contend Defendant Braudrick is entitled to qualified immunity because no reasonable official would think that using physical force to subdue Plaintiff, who had spat on him and attacked him in the course of his duties, was unlawful. (Doc. 80 at 4.)

---

[9] Defendants' motion is not supported by a declaration from either Defendant Braudrick or Defendant Maddux.

1    //

2          Defendants further argue that, given Plaintiff's guilty plea and the "*Heck*-bar analysis

3    above, Defendant Maddux would not have thought it was unlawful for him to observe as a

4    subordinate officer managed the threat posed by" Plaintiff. (Doc. 70-2 at 9.) In opposition,

5    Plaintiff contends Defendant Maddux is not entitled to qualified immunity because Plaintiff was

6    no longer resisting when Defendant Braudrick used excessive force against him, yet Maddux

7    failed to intervene as supervisor. (Doc. 79 at 21-22.) Defendants reply that Defendant Maddux is

8    equally entitled because Maddux did not violate clearly established law by witnessing

9    Braudrick's lawful application of force. (Doc. 80 at 4.)

10          The court finds that granting summary judgment on grounds of qualified immunity in the

11    use of force context would not be proper. By resolving all factual disputes in Plaintiff's favor at

12    this stage, the court concludes that if Plaintiff's version of events is true—that after the spitting

13    and attempted kicking incident, and after he was restrained and not resisting, Defendant

14    Braudrick continued to beat Plaintiff while Defendant Maddux took no action—then Defendants

15    Braudrick and Maddux violated Plaintiff's clearly established right to be free from excessive

16    force. *See Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003) ("the law regarding a prison

17    guard's use of excessive force was clearly established by 1994"). Granting summary judgment on

18    the ground of qualified immunity is "improper if, under the plaintiff's version of the facts, and in

19    light of the clearly established law, a reasonable officer could not have believed his conduct was

20    lawful." *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000). *See, e.g.*, *Watts v. McKinney*,

21    394 F.3d 710, 712-13 (9th Cir. 2005) (finding prison guard could not reasonably believe he could

22    lawfully kick prisoner who was on the ground and in handcuffs).

23          While resolution of the factual issues may well relieve Defendants of any liability in this

24    case, if Plaintiff's version of the facts were to prevail at trial a reasonable jury could conclude that

25    Defendants inflicted unnecessary and wanton force in violation of Plaintiff's constitutional rights.

26    Defendants Braudrick and Maddux are therefore not entitled to summary judgment on grounds of

27    qualified immunity in connection with Plaintiff's excessive force allegations.

28    //

1  //

2  ### 2. *Defendant Torres*

3  Defendants contend that Plaintiff's lack of admissible evidence to support a deliberate

4  indifference claim alone establishes Defendant Torres is entitled to qualified immunity. (Doc. 70-

5  2 at 9.) Further, Defendants argue the undisputed facts show Torres' actions were lawful and

6  reasonable under the circumstances: Torres authored CDCR Form 7219, noting Plaintiff's injuries

7  and finding Plaintiff "did not have any serious injuries or injuries that required elevated care,"

8  referring the form to her supervisor. (*Id.*)

9  In opposition, Plaintiff contends Defendant Torres is not entitled to qualified immunity

10  because Torres failed to notify Nurse Calderon of his true condition after Plaintiff advised Torres

11  he was in a lot of pain and needed medical attention. (Doc. 79 at 22.) Plaintiff contends the reason

12  Nurse Calderon did not refer him for follow up treatment with his primary care physician was

13  because "Torres lied when she recorded her findings" following examination; Torres did not state

14  Plaintiff's face and eyes were swollen and that his he was in a lot of pain. (*Id.* at 22-23.) Plaintiff

15  concludes he had a clearly established right to medical treatment. (*Id.* at 23.)

16  In reply, Defendants contend that Defendant Torres is entitled to qualified immunity

17  because the law is clear that Plaintiff has no clearly established right to the treatment of his

18  choice. (Doc. 80 at 4.)

19  Because the undersigned has already determined summary judgment should be granted in

20  Defendant Torres's favor, an analysis of whether Defendant Torres is entitled to qualified

21  immunity is unnecessary.

22  ### V.   CONCLUSION AND RECOMMENDATIONS

23  For the reasons stated above, IT IS HEREBY RECOMMENDED that:

24  1. Defendants' motion for summary judgment be DENIED as to the excessive force

25     claims against Defendants Braudrick and Maddux; and

26  2. Defendants' motion for summary judgment be GRANTED as to the deliberate

27     indifference to serious medical needs claim against Defendant Torres.

28  These Findings and Recommendations are submitted to the United States District Judge

20

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **June 25, 2022**                    **/s/ Gary S. Austin**
                                                                      UNITED STATES MAGISTRATE JUDGE